IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES MINSKI,

        Plaintiff,

v.                                             Case No. 24-3014-JWB

SONYA LEWIS,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 28.) The motion is fully briefed and ripe for decision. (Docs. 29, 30, 31.) The motion is GRANTED for the reasons stated herein.

**I. Facts and Procedural History**

Plaintiff James Minski (hereinafter "Plaintiff" or "Mr. Minski") is an inmate at Winfield Correctional Facility in Winfield, Kansas. (Doc. 1 at 1.) He brings this action pro se, against Dr. Sonya Lewis (hereinafter "Defendant" or "Dr. Lewis"), a dentist, who performed a tooth extraction while Plaintiff was incarcerated. (*Id.*) Dr. Lewis is employed by a contractor, Centurion, which provides medical services to inmates at the Winfield Correctional Facility. (*Id.*)

Beginning on May 7, 2023, Plaintiff began to complain of tooth pain. (*Id.* at 2.) Over the next month Plaintiff made repeated requests to see a dentist at the facility. (*Id.*) Plaintiff also made (and was granted) repeated requests for pain medication to mitigate the discomfort he was suffering due to his tooth. (*Id.*) On June 6, 2023, Plaintiff was seen by a dentist, Dr. Lewis. (*Id.* at 4.) Dr. Lewis informed Plaintiff that his tooth extraction would have to be rescheduled for June 20, 2023. (*Id.*) Defendant, at Plaintiff's request, agreed to prescribe more pain medication in the

1

interim two weeks. (*Id.*) According to Plaintiff, no medication order was sent to him, and his inquiry about the status of the pain medication was not returned until nearly a month and a half later on July 29, 2023. (*Id.*) Plaintiff also requested more pain medication on June 17; this request was also not answered until July 29. (*Id.*)

Plaintiff also allegedly experienced serious swelling of his jaw on two occasions after the June 6 visit with Dr. Lewis. (Doc. 8-1 at 1.) He attests that two witnesses noticed the swelling. (*Id.* at 1-2.) When Mr. Minski's extraction date of June 20 arrived, he was told it would be another week until he could be seen. (Doc. 1 at 5.) But, on June 22, Plaintiff was called to the dentist's office and examined. (*Id.*) Defendant determined Plaintiff's tooth was now infected and needed to be treated with antibiotics prior to extraction. (*Id.*) Once treatment was complete, Plaintiff had his tooth extracted by Dr. Lewis on July 4, 2023. (*Id.*) Mr. Minski may have finally celebrated independence from his ailing tooth that day, but the fifty-seven-day period from symptoms to surgery is what prompted him to initiate this lawsuit. (*Id.*)

Plaintiff filed his complaint seeking monetary damages under 42 U.S.C. § 1983. (*Id.* at 2.) He seeks damages in the amount of $1,500 per day as compensation for the pain he suffered due to the delay in his procedure. (*Id.* at 7.) Plaintiff's claim is that of deliberate indifference to his medical needs under the Eighth Amendment to the United States Constitution which prohibits cruel and unusual punishment. (*Id.* at 3.)

Defendant has filed a motion to dismiss (Doc. 28), where she asserts that Mr. Minski has both failed to state a cognizable claim under the Eighth Amendment and has also failed to exhaust his administrative remedies before filing suit, as required by federal law. (Doc. 29 at 3, 6.) Mr. Minski responds that he did exhaust his remedies through the Kansas Department of Corrections

and has adequately pled a claim of deliberate indifference. (Doc. 30 at 4, 10.) The court will evaluate the parties' arguments in turn.

## II. Standard

### A. Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Given Plaintiff's pro se status, the court construes his pleadings liberally, but it cannot act as his advocate or construct arguments on his behalf. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

## III. Analysis

### A. Exhaustion

Defendant argues that Plaintiff has failed to exhaust his administrative remedies through the Kansas Department of Corrections and his suit should therefore be dismissed. (Doc. 29 at 6-8.) The Prison Litigation Reform Act ("PLRA") governs prisoner lawsuits in federal court. *Perttu v. Richards*, 605 U.S. 460, 464 (2025). The PLRA requires that prisoners, either federal or state, exhaust available administrative grievance processes before filing a federal lawsuit. *Id.*; 42 U.S.C. § 1997e(a). "A prison's procedural requirements define the steps necessary for exhaustion[;] an inmate may only exhaust by properly following all of the steps laid out in the prison system's

grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

In Kansas, the prison grievance process is established by administrative regulation. *See* K.A.R. § 44-15-101. Prisoners are responsible for first attempting informal resolution of the matter. *Id.* at (b). If that fails, a grievance must first be filed via a form to "an appropriate team member of the facility" where the inmate is incarcerated. *Id.* at (d)(1). If this fails, the prisoner is supposed to file the grievance form with the prison's warden. *Id.* at (d)(2). The final stage of the grievance process requires the grievance to be submitted to the Office of the Secretary of Corrections for the State of Kansas. *Id.* at (d)(3). Once the grievance has worked its way up this chain, and the Secretary of Corrections (or designee) has issued a final decision, an inmate has exhausted his administrative remedies. *See Pusha v. Myers*, 608 F. App'x. 612, 614-15 (10th Cir. 2015).

Plaintiff has submitted records from the grievance process alongside his complaint that demonstrate he has adequately exhausted his remedies such that an action in district court is appropriate. *See* (Doc. 1-1 at 8.) Plaintiff filed his initial "Inmate Grievance Form" on the standard form to be sent to the warden. (*Id.* at 14.) Plaintiff complained that he suffered an unnecessarily long delay from his initial onset of tooth pain to extraction. (*Id.* at 16.) Mr. Minski alleged his "mood, sleep, and diet" were affected. (*Id.*) Mr. Minski emphasized the fact that the Winfield Correctional Facility is a "long-term care (medical) facility." (*Id.*) He then explained that delays in care should not happen because "there should be staff available" at a medical facility. (*Id.*) The medical center's response to the grievance indicated "Resident Minski's concerns with his dental pain has [sic] been addressed with the extraction of his tooth." (*Id.* at 13.) The warden's response

4

indicated "no action taken." (*Id.* at 12.) Mr. Minski appealed to the Secretary of Corrections. (*Id.* at 9.)

Attachments to Plaintiff's complaint indicate receipt of an "Official Grievance Response" from Darcie Holthaus, the Secretary of Corrections Designee on September 5, 2023. (*Id.* at 8.) The response says there is "no further recommendation" of action at the time of the complaint but that Mr. Minski "deserve[d] an apology and assurance that such a delay will not happen again once the facility has gotten back to staffing ideals." (*Id.*)

Defendant claims that Plaintiff has not properly exhausted his claims because he did not make clear in his prison grievances that his complaints are with Dr. Lewis. (Doc. 29 at 6-7.) Defendant contends that Plaintiff has raised what is essentially a complaint about staffing through the prison grievance process and then has turned around and sued the dentist in federal court. (*Id.*) In support of her argument, Defendant points to language in Plaintiff's grievance that purportedly "absolves" Defendant and all medical staff of wrongdoing. (*Id.*) Plaintiff's grievance stated: "none of the medical staff at this facility did anything wrong, that I'm aware of. All the staff here, medical, security and administrative, acted promptly, professionally, and with care, at every turn of the ordeal. Each person that had any involvement with me during this ordeal did all that was within their ability." (Doc. 1-1 at 16.) Plaintiff rebuts Defendant's argument by saying he was not including Dr. Lewis in this statement but rather was referring to the support staff. (Doc. 30 at 7.) Mr. Minski supports this distinction by explaining that Dr. Lewis was not a full-time staff member at the correctional facility but instead only worked there ten hours per week. (*Id.*) According to Mr. Minski, his statement only applied to those who were full-time staff at the facility. (*Id.*)

Regardless of the staffing distinctions, the court finds that Defendant's argument that Mr. Minski failed to exhaust because "his grievance is not . . . related to any specific claims against Dr. Lewis" to be incorrect. A review of Mr. Minski's grievances indicates a consistent concern with decisions possibly within the purview of the dentist, to include scheduling. (Doc. 1-1 at 10, 16.) Moreover, the PLRA does not require hair splitting over who the grievance was directed against for exhaustion purposes.

As explained above, the PLRA looks to state law to determine what a prisoner must do to exhaust his remedies. The cases cited by Defendant confirm this point. *See Sanders v. Williams*, 2010 WL 1631767 at *11 (D.N.M. Mar. 30, 2010) ("The Court . . . begins, therefore, by determining what information the prison policies required Sanders to disclose in the grievance procedure and whether Sanders fully exhausted the remedies that were available to him."); *Barnes v. Allred*, 482 F. Appx. 308, 311 (10th Cir. 2011) (citing to Bureau of Prisons regulations to determine whether a plaintiff had sufficiently exhausted his remedies within the federal prison system). In Kansas, an inmate grievance report must contain, among other administrative things, "a specific complaint that states *what or who* is the subject of the complaint, related dates and places, and what effect the situation, problem, or person is having on the inmate that makes the complaint necessary." K.A.R. § 44-15-102 (b)(1)(A) (emphasis added). Mr. Minski complied with this requirement. Accordingly, the court finds that Mr. Minski adequately exhausted his administrative remedies.

**B.**     **Failure to State a Claim**

Defendant next contends that Plaintiff has failed to properly state a claim for deliberate indifference and therefore his complaint should be dismissed. (Doc. 29 at 3.) "Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment." *Redmond v.*

*Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (internal quotation marks omitted) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).  The Tenth Circuit recognizes two kinds of deliberate indifference cases: failure to treat a medical condition properly and denial of access to medical treatment.  *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).  These claims have an objective and subjective element that a Plaintiff must plead.  *Crowther*, 882 F.3d at 939.

The objective component requires that the alleged injury is sufficiently serious.  *Id.*  "A delay in medical care is only sufficiently serious if 'the plaintiff can show the delay resulted in substantial harm.'"  *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  Substantial harm can include "lifelong handicap, permanent loss, or considerable pain."  *Mata*, 427 F.3d at 751.  If "even a lay person would easily recognize the necessity for a doctor's attention" then the condition is sufficiently serious under the objective prong.  *Id.* (internal citation and quotation marks omitted).

The subjective component requires Plaintiff to show that the responsible prison official "knew the inmate faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it."  *Crowther*, 882 F.3d at 939-40 (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088-89 (10th Cir. 2009)).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  But "intentional denials, delay, or interference with medical care will meet the subjective prong of the test."  *Crowther*, 882 F.3d at 940 (citing *Estelle*, 429 U.S. at 104-05).  Sufficient awareness of facts "from which the inference could be drawn that a substantial risk of serious harm exists" will satisfy the subjective prong when the "risks would be obvious to a reasonable person."  *Estate of Jensen by Jensen v. Clyde*, 989 F.3d 848, 859 (10th Cir. 2021).

Furthermore, "a prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition. Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755.

Dr. Lewis contends that Mr. Minski has failed to plead facts that demonstrate a "medical condition sufficiently serious" such that "Dr. Lewis was deliberately indifferent" to that condition. (Doc. 29 at 4.) The court agrees and finds that Mr. Minski has not adequately plead either component of the deliberate indifference test. The complaint states that Mr. Minski suffered serious pain because of his toothache and the delay in treating it. (Doc. 1 at 4-5; Doc. 10 at 3.) This pain and suffering allegedly included severe swelling of Plaintiff's jaw. (Doc. 10 at 3.) Still, other courts have held that similar claims of tooth pain are insufficient under the objective prong. *See Greene v. Pollard*, 335 F. Appx. 612, 613 (7th Cir. 2009).

In *Greene*, the Seventh Circuit affirmed the dismissal of a prisoner's complaint where he alleged "constant aching and sensitivity in his upper left canine tooth as well as another lightly chipped tooth." *Id.* Greene wanted the prison dentist to perform a certain type of procedure to solve the toothaches. *Id.* The prison dentist was unwilling, reportedly saying "I only fill teeth with decay or pull 'em.'" *Id.* After the dentist's refusal, Greene's pain allegedly got worse and "interfere[d] with his eating and sleeping habits" and that the tooth "deteriorated." *Id.* The Seventh Circuit affirmed dismissal of Greene's complaint because "the only symptoms he alleged . . . were a constant aching in his tooth and a sensitivity to hot and cold temperatures." *Id.* at 614. Those symptoms fell "short of a condition such as tooth decay or gum infection, which [the court has] recognized as serious because of the substantial risks to health if left untreated." *Id.*

A review of Plaintiff's complaint shows remarkably similar concerns. Plaintiff's complaint alleges "pain in tooth" and "increased pain" which led to the submission of sick call forms. (Doc.

1 at 2.) Plaintiff ends his complaint alleging "having to miss many meals, suffering loss of sleep, and both emotional and physical distress. There were times when even trying to drink water was a painful experience." (*Id.* at 5.) A review of Plaintiff's prison grievances, attached to his complaint, is consistent with his allegations: concerns about tooth pain. (Doc. 1-1 at 1-2, 4-6, 8-18.) He described his tooth as "extremely sensitive" and "throbbing." (*Id.*) Plaintiff's response to the court's show cause order repeats the same symptoms. (Doc. 10 at 5.)

The other cases that Plaintiff uses to support his pleadings are markedly different from this case. While dental care is undeniably one facet of the adequate medical care owed to prisoners, the cases that Defendant cites are considerably more severe than the facts alleged here. *See e.g.*, *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995) (Plaintiff was found to have an infected tooth and was then forced to wait months for extraction); *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (Plaintiff alleged a dental procedure was performed negligently resulting in months of pain and dangerous medical conditions); *Williams v. York*, 891 F.3d 701 (8th Cir. 2018) (Plaintiff sued prison officials who were allegedly responsible for delays in his medical treatment for tooth pain that became "boil type sores"). As a result of the foregoing, Plaintiff has failed to satisfy the pleading requirements of the objective prong of the deliberate indifference test.

Defendant Lewis also contests Plaintiff's pleading of the subjective prong. (Doc. 29 at 4.) Dr. Lewis claims that Mr. Minski does not "plead that any delay, prior to his first appointment with Dr. Lewis was due to the actions of Dr. Lewis." (*Id.*) "Thus, the length of any perceived or alleged delay in extraction of the tooth was only 12 days, in which 10 of those days were due to the treatment of Mr. Minski's infection." (*Id.*) The court agrees. To understand why Mr. Minski's complaint does not bear out liability for Dr. Lewis, the court must closely examine the timeline of the alleged events. Mr. Minski alleges that he first placed a sick call request on May 7, 2023.

(Doc. 1 at 2.) He alleges that the following day on May 8, he was scheduled to see the dentist on June 6. (*Id.*) Plaintiff declined pain medication for his tooth on this day. (*Id.* at 4.) On May 12, however, his pain had worsened, and he placed a request for pain medication. (*Id.*) That request was granted, and Mr. Minski received a three-day supply of medication. (*Id.*) On May 16, having exhausted that supply, Mr. Minski asked for more pain medication; he was issued a thirty-day supply on May 18. (*Id.*) On June 6, Plaintiff was seen by the dentist but was told that his extraction would have to wait until June 20. (*Id.*) Plaintiff allegedly requested more pain medication and was told it would be ordered. (*Id.*) On June 11, Plaintiff inquired about the pain medication orders. (*Id.*) Having received no response Plaintiff requested more pain medication on June 17. (*Id.*) On June 22, two days after his scheduled appointment, Plaintiff was seen by the dentist. (*Id.* at 4-5.) Plaintiff was then diagnosed with an infection for which he was prescribed antibiotics and pain medication. (*Id.* at 5.) On July 4, the tooth was extracted. (*Id.* at 5.) Plaintiff did not receive a response to his last pain medication request until July 29. (*Id.* at 4.)

From these facts, the court gathers that there are three possible buckets of liability. The first bucket is the delay in seeing a dentist after complaining of pain, that occurred from May 7 and lasted nearly one month to June 6. (Doc. 1 at 2.) Mr. Minski does not allege that his pain or this time period is attributable to some deliberate indifference by Dr. Lewis. Therefore, this time period cannot be the basis of Eighth Amendment liability.

The second possible period of liability is the two-week delay between June 6, when Plaintiff first saw Dr. Lewis, and June 20, the date that he was scheduled for his extraction. (*Id.* at 4-5.) The court notes here that Plaintiff was rescheduled from June 20 and was not seen until June 22. (*Id.* at 5.) Mr. Minski does not allege that this inability to extract for 16 days is attributable to deliberate indifference by Dr. Lewis. Rather he alleges that she failed to fill pain medication orders

that he requested during the June 6 meeting and later on June 17. (*Id.* at 4.) But this argument, given the facts in Mr. Minski's own complaint, is perplexing. Mr. Minski pled that he received a thirty-day supply of pain medication on May 18. (*Id.* at 4.) Basic math says that medication should have lasted him until June 17. The delay from the end of his thirty-day pain medication series to his dental visit on June 22 is only five days. Before June 17, the delay does not look like deliberate indifference but rather the dentist electing not to prescribe excess pain medication prior to the exhaustion of a previous supply. Between June 17 and June 22, there are simply no facts alleged to suggest Defendant was deliberately indifferent. "The 'negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.'" (Doc. 6 at 5) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)).

The final period of possible liability is the dentist's apparent failure, according to Mr. Minski, to anticipate the possibility of infection in the time period between his first visit on June 6 and his scheduled extraction date. (*Id.*) Mr. Minski's tooth became infected during this period but he was told by the dentist on June 6 that "it would be okay." (*Id.*) But Mr. Minski does not allege that Dr. Lewis' care fell below the appropriate standard of care for a dentist. Mr. Minski has not pled that Dr. Lewis knew the tooth would become infected on June 6 or that swelling of his jaw would occur. In the absence of such allegations, the court cannot conclude that Dr. Lewis was deliberately indifferent, even construing Plaintiff's complaint liberally.

As a result, Plaintiff's complaint must be dismissed for failure to state a claim. While the court understands Mr. Minski may have suffered pain during his ordeal, based on these allegations against this defendant, the court is forced to repeat that "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate

indifference.'"  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Bare recitations of the standard will not suffice to establish a culpable state of mind, even at the motion to dismiss stage.  *See Twombly*, 550 U.S. at 555.

## IV. Conclusion

For the foregoing reasons Defendant's motion to dismiss (Doc. 28.) is GRANTED.

IT IS SO ORDERED.  Dated this 14th day of November, 2025.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE
